610 A.2d 439

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Tyrone JONES, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1991.

Decided May 19, 1992.

John W. Packel, Chief, Appeals Div., Leonard N. Sosnov, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., George S. Leone, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant Tyrone Jones appeals from the judgment of the Superior Court *en banc*, which quashed the appeal of his

conviction for robbery and criminal conspiracy. 388 Pa.Super. 22, 564 A.2d 983 (1989). The court concluded that appellant forfeited his right to appellate review because he was a fugitive during the appellate process. We affirm.

The relevant facts are as follows. On January 27, 1984, appellant was arrested in Philadelphia on charges stemming from the mugging of James Watson. Jury selection began on Friday, February 1, 1985. Appellant, who was free on bail, failed to appear in court on Monday, February 4, 1985, after the weekend recess. The trial court issued a bench warrant for appellant's arrest and continued with jury selection and the ensuing trial in his absence, pursuant to Pa.R.Crim.P. 1117(a).[1]

On February 6, 1985, the jury found appellant guilty of robbery and criminal conspiracy. In appellant's absence, defense counsel timely filed post-verdict motions, which the trial court denied on the merits. On June 10, 1985, the trial court sentenced appellant *in absentia* to a prison term of three to eight years on the robbery conviction and a consecutive sentence of one to two years on the conspiracy conviction. The trial court denied the subsequent petition for reconsideration of sentence filed on appellant's behalf, and defense counsel timely filed a notice of appeal to the Superior Court on June 20, 1985. While his appeal was pending, appellant was arrested as a fugitive in Maryland on February 2, 1987—two years after his escape.

On appeal, a panel of the Superior Court granted appellant, who had by this time been in custody for over a year and a half, a new trial. The Commonwealth timely filed a petition for reargument, which was granted. The *en banc* panel of the Superior Court *sua sponte* quashed appellant's appeal because of his flight from justice during jury selection in February of 1985. The sole issue presented for our

1. Rule 1117(a) provides, in pertinent part, that "[t]he defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict."

review is whether appellant forfeited his right to appellate review by having been a fugitive from justice.[2]

The right to appeal is guaranteed by our state constitution.[3] However, "the right to appeal is conditioned upon compliance with the procedures established by this Court, and a defendant who deliberately chooses to bypass the orderly procedures afforded one convicted of a crime for challenging his conviction is bound by the consequences of his decision." *Commonwealth v. Passaro,* 504 Pa. 611, 614, 476 A.2d 346, 348 (1984); *Commonwealth v. Coleman,* 458 Pa. 324, 327 A.2d 77 (1974); *Commonwealth v. Wallace,* 427 Pa. 110, 233 A.2d 218 (1967).

The dismissal of an appeal, where a defendant deliberately bypasses the judicial process by means of escape, is one such consequence. "Disposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law." *Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377, 380 (1975). The United States Supreme Court has held that escape "disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970). Likewise, this Court has held that a defendant who escapes from custody forfeits his right to appellate review. *E.g., Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984); *Commonwealth v. Luckenbaugh,* 520 Pa. 75, 550 A.2d 1317 (1988) (per curiam); *Commonwealth v. Craddock,* 522 Pa. 491, 564 A.2d 151 (1989) (per curiam). A

**2.** Although appellant also challenges his sentencing *in absentia,* we do not have jurisdiction to review that issue because allocatur was limited solely to the issue of whether the *en banc* Superior Court properly quashed appellant's appeal per *Commonwealth v. Passaro, infra,* based on appellant having been a fugitive.

**3.** Pa.Const.Art. 5, § 9 provides:
   There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

court may dispose of such an appeal by dismissal upon motion of any party,[4] or it may act *sua sponte*.[5]

In *Passaro*, the defendant escaped while his appeal was pending. Consequently, the Commonwealth filed a motion to quash the appeal, which the Superior Court granted. The defendant was subsequently returned to custody. He filed a petition to reinstate his appeal, which the Superior Court denied, and then filed a similar petition in this Court.

We denied the defendant's petition to reinstate his appeal, stating:

> ... a defendant's resort to escape constitutes a flagrant and deliberate bypass of the entire judicial process. The escape of a convicted defendant from confinement may properly be considered a rejection of the legitimate means afforded the defendant for challenging his conviction and imprisonment. Thus, by choosing to flee and live as a fugitive, a defendant forfeits the right to have his claims considered.

*Id.* 520 Pa. at 615, 476 A.2d at 349.

In subsequent cases, we have repeatedly held that a defendant who chooses to bypass proper judicial procedures by fleeing from justice forfeits his appellate rights. In *Luckenbaugh*, the defendant escaped while his petition for reconsideration of sentence was pending. The trial court *sua sponte* dismissed his petition for reconsideration because of his fugitive status, and defense counsel filed a notice of appeal on behalf of the defendant. The Superior Court held that the defendant had not forfeited his appellate rights and addressed the merits of his appeal. On appeal, this Court reversed on the basis of *Passaro*. *Luckenbaugh*, 520 Pa. 75, 550 A.2d 1317 (per curiam). Similarly, in *Craddock*, we upheld the Superior Court's application of *Passaro* where the defendant escaped during jury deliberations and was sentenced *in absentia*.

4. Pa.R.A.P. 1972(6).

5. *Commonwealth v. Tomlinson*, 467 Pa. 22, 354 A.2d 254 (1976).

A defendant's voluntary escape acts as a per se forfeiture of his right of appeal, where the defendant is a fugitive at any time after post-trial proceedings commence. Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody. Thus, by choosing to flee from justice, appellant forever forfeited his right to appeal.

Accordingly, we affirm the judgment of the Superior Court *en banc* quashing appellant's appeal.

McDERMOTT, Justice, joins this opinion and files a concurring opinion.

NIX, C.J., concurs in the result.

CAPPY, J., files a dissenting opinion joined by ZAPPALA, J.

McDERMOTT, Justice, concurring.

I join in the opinion of the Majority but feel compelled to offer the following comments.

The dissenting opinion of Mr. Justice Cappy is a lachrymose call to give the appellant what was not denied. He was not denied a fair trial, his presence at his trial and sentence, or his right to appeal. Rather Mr. Justice Cappy insists on his "American" right to absent himself from his trial and hold it when he is caught and only then, "even if it is 25 years later."

No society on earth offers more than we do to preserve and protect the rights of those held for trial. It is more than simple discourtesy not to attend. It is an anarchical contempt of everything that so many have died to preserve. The thinking behind the scenario offered of "Jurors threatened with bodily harm—at gunpoint!!! to render a guilty verdict" has an unworldly tinge. If such thinking is prologue to what can be expected, we should all escape before it's too late.

CAPPY, Justice, dissenting.

Today the majority creates a system of justice unprecedented in this country, a system wherein a defendant may be unfairly tried and sentenced *in absentia*, with no right of appeal under any circumstances. I must vigorously dissent. Justice requires the assurance of a fair trial, an assurance secured by the guarantee of appellate review. I cannot countenance a system of jurisprudence that endorses trial and sentence *in absentia* beyond the reach of appellate review.

In no case involving the dismissal of a fugitive's appeal do we find facts such as those present at bar. It is intolerable as a matter of due process to permit a defendant to be tried, sentenced, and jailed *without* any right to appellate review, merely as additional punishment for the fact that he or she absconded during the course of the proceedings.

The facts are undisputed. Tyrone Jones voluntarily absented himself during jury selection in his trial. Over the objection of defense counsel, and in Jones' absence, the trial court nonetheless proceeded with trial and eventually accepted the jury's verdict of guilty of robbery and criminal conspiracy. Subsequently, the trial court imposed sentence upon Tyrone Jones *in absentia*.

The majority would have us gloss over these important facts and focus only upon the fact that Tyrone Jones "voluntarily" absented himself from the above-referenced proceedings. Concentrating all attention upon Jones' actions, the majority ignores the equally objectionable conduct of the trial court in its decision to proceed in Jones' absence. Given the trial court's actions, this case cannot blithely be disposed of, as the majority suggests, by reference to the decision in *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984). As I will demonstrate, there are two important questions which must be addressed before turning to the applicability of *Passaro* to the facts of the instant case.

Review in this case must begin with the trial court's decision to proceed to trial in Jones' absence. Pa.R.Crim.P. 1117(a) expressly permits a court to continue with a trial in the defendant's absence, up to and including return of the verdict. However, Rule 1117(a) does not *require* trial *in absentia;* whether to proceed in this fashion is a matter that is lodged within the reasonable discretion of the trial judge.[1] It is clear that in this case the trial court abused its discretion in proceeding with the trial *in absentia.*

The decision to proceed to trial in the absence of the accused is not one that should be undertaken lightly. As the Second Circuit Court of Appeals has concluded, in considering the analogous federal rule permitting trial *in absentia,* the discretion of the trial judge should be exercised only in "extraordinary circumstances." *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). The *Tortora* Court continued:

"Indeed, we would add that this discretion should be exercised only when the public interest clearly outweighs that of the voluntarily absent defendant. Whether the trial will proceed will depend upon the trial judge's determination of a complex of issues. He must weigh the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, again particularly in multiple-defendant trials where the evidence is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy."

*Id.* at 1210 (footnote omitted).

The *Tortora* Court found that the trial judge's exercise of discretion to try defendant Tortora *in absentia* was proper

1. Trial *in absentia* has been approved by this Court in the unusual situation where the defendant has attempted to disrupt the proceedings by his outrageous behavior in the courtroom. *Commonwealth v. Basemore,* 525 Pa. 512, 582 A.2d 861 (1990).

only because of the extraordinary circumstances present in that case, namely:

> As a result of the difficulty of coordinating the defense attorneys' conflicting schedules and the unsubstantiated claims of physical ailments made by two other defendants, numerous delays had already occurred in this multiple-defendant trial. The Government's case rested almost exclusively on the testimony of one witness who had already been threatened on numerous occasions by the appellants. Extensive delays would almost certainly have accompanied any adjournment and the Government's main witness would have continued to be in potential danger until his testimony was completed. Severance would have added substantially to the burden on the Government and its witnesses, necessitating two trials in the place of one: it would have been an unwarranted delay in the expeditious administration of justice. Moreover, the danger to the Government's witness would have continued until that indefinite time in the future when the witness's testimony in the second trial would have been completed.

*Id.*

The *Tortora* Court, moreover, expressly premised its approval of the trial court's exercise of discretion to proceed with Tortora's trial *in absentia* on the fact that this was a multi-defendant case, adding: "It is difficult for us to conceive of any case where the exercise of this discretion would be appropriate other than a multiple-defendant case." *Id.* at 1210 n. 7.

The Fifth Circuit Court of Appeals, following the guidance of *Tortora*, overturned a trial judge's exercise of discretion to proceed with a trial *in absentia* where "[o]ther than the possibility of juror inconvenience, the record demonstrates no great difficulty in rescheduling the trial." *United States v. Benavides*, 596 F.2d 137, 140 (5th cir.1979). The *Benavides* Court added:

> Indeed, nothing in the record indicates that the trial court attempted to discover whether a continuance would

have unduly inconvenienced any person who had actually been selected as a member of the jury. Even if one juror had been unable to serve in the future, there is no indication that an alternate juror could not have been seated for the trial. The government did not argue that it could not have produced its three witnesses had the trial been rescheduled to a later date. The third factor, the burden of conducting two trials, does not support the trial court's decisions. At the time the defendants absented themselves, the trial had proceeded only to jury selection; no evidence had been taken. There was no need to proceed with the trial on behalf of other defendants because only Benavides and Garcia were charged.... There was no suggestion that the government's witnesses, all law enforcement officials, would be in any way jeopardized if the trial were not speedily concluded.

In summary, we see no adequate reason why the district court felt compelled to proceed with the trial.

*Id.*

There are numerous decisions—both federal and state—following the approach taken by the *Tortora* and *Benavides* courts, premising the exercise of a trial court's discretion to proceed with an absent defendant's trial *in absentia* on a clear and compelling showing of extraordinary circumstances.[2]

**2.** *See, e.g., United States v. Crosby,* 917 F.2d 362, 366 (8th Cir.1990) (setting out list of factors to be considered); *United States v. Latham,* 874 F.2d 852, 857–60 (1st Cir.1989) (listing factors and noting rarity of proper exercise of discretion in single-defendant trial); *Sawyers v. State,* 196 Ga.App. 772, 396 S.E.2d 926 (1990) (abuse of discretion to continue in defendant's absence without specific waiver of right to be present); *State v. Caraballo,* 62 Haw. 309, 615 P.2d 91 (1980); *People v. Thomas,* 216 Ill.App.3d 405, 159 Ill.Dec. 683, 576 N.E.2d 352 (1991) (abuse of discretion to proceed in defendant's absence without waiver of right to be present); *Phillips v. State,* Ind.Ct.App., 543 N.E.2d 646 (1989) (decision to proceed in absence of defendant in discretion of trial court, with presumption against trial in absentia); *State v. Howard,* 588 A.2d 1203 (Me.1991) (discretion of trial court, presumption against trial in absentia); *State v. Hudson,* 119 N.J. 165, 574 A.2d 434 (1990) (discretion of trial court, follows federal case law); *State v. Clements,* 108 N.M. 13, 765 P.2d 1195 (1988) (discretion of trial court

I find these decisions from other jurisdictions to be convincing. Indeed, it appears to me that due process mandates that the decision to divest an absent defendant of his or her right to be present at trial be made fairly and carefully and only in such extraordinary circumstances as detailed above. Pa.Const.Art. I, Sec. 9. Accordingly, I would find that the trial court abused its discretion in this case by proceeding with trial *in absentia*, without establishing of record a clear and compelling showing of extraordinary circumstances creating the necessity to do so; accordingly I would remand for a new trial.

Even if the trial court had not abused its discretion in conducting the instant trial *in absentia*, the trial court erred as well by disregarding the absolute requirement in Pennsylvania that a defendant be present at sentencing.[3] All of the concerns heretofore set forth with regard to the necessity for a clear and compelling showing of extraordinary circumstances prior to a trial *in absentia* apply equally to the sentencing stage. More important sentencing *in absentia* is expressly forbidden by Pennsylvania. Pa. R.Crim.P. 1117(a).

As in Pennsylvania, Federal law and the law of most of our sister states which have addressed this issue, require the presence of the defendant at sentencing.[4] Obviously,

lists factors); *People v. McGee*, 555 N.Y.S.2d 527, 161 A.D.2d 1195 (1990) (defendant must specifically waive right to be present, or court abuses discretion); *State v. Richardson*, 330 N.C. 174, 410 S.E.2d 61 (1991) (discretion of trial court, burden on defendant to explain absence); *Delancy v. State of Oklahoma*, 596 P.2d 897 (Okla.Crim.App.1979) (discretion of trial court); *Hunter v. Commonwealth of Virginia*, 409 S.E.2d 483 (Va.App.1991) (commonwealth must establish prejudice).

3. The majority asserts in note 2, that we are precluded from addressing this issue as allocatur was limited to the question of whether or not Jones' appeal was properly quashed. I disagree. The trial court acted beyond the scope of its authority in imposing sentence on an absent defendant. Pa.Const.Article V, Section 2. The defendant properly preserved this issue through-out the appellate process. This Court may *sua sponte* raise questions of jurisdiction. *Commonwealth v. Saunders*, 483 Pa. 29, 394 A.2d 522 (1978).

4. *See, e.g., United States v. Songer*, 842 F.2d 240, 244 (10th Cir.1988) (defendant must be present during sentencing under analogous Fed.

these jurisdictions have concluded that issues such as missing witnesses, multiple defendants, threats to informants, and juror inconvenience, often used by the government in its insistence on trial *in absentia,* are wholly irrelevant at the sentencing phase. Thus, whether the sentencing occurs immediately or twenty-five years later, the government suffers no prejudice. This is hardly a novel proposition in Pennsylvania. *See Lynch v. Commonwealth,* 88 Pa. 189, 194 (1878) (defendant "cannot be sentenced until he appears.... Presence at the verdict is clearly less important.").

Indeed, the requirement that the defendant be present at sentencing in Pennsylvania is plainly and clearly stated in Pa.R.Crim.P. 1117(a). The first sentence of Rule 1117(a) echoes the fundamental requirement of due process that:

R.Crim.P. 43(a); "The rule that the defendant must attend his sentencing is not subject to any exception."); *United States v. DeValle,* 894 F.2d 133, 137 (5th Cir.1990) ("it has uniformly been held that fugitive status—at least fugitive status commencing before the sentencing proceeding begins—does not justify sentencing *in absentia*"). *See generally* Wright, *Federal Practice and Procedure: Criminal* (2d ed.) § 723, pp. 25–26 ("If the defendant has voluntarily absented himself, the court is authorized to proceed only up to the return of the verdict. It is not authorized to impose sentence until the defendant has been returned.").

Several of our sister states follow the same procedure: *Cline v. State,* 571 So.2d 368 (Ala.Cr.App.1990); *Merry v. State,* 752 P.2d 472 (Alaska App.1988); *State v. Fettis,* 136 Ariz. 58, 664 P.2d 208 (1983); *Lowery v. Arkansas,* 297 Ark. 47, 759 S.W.2d 545 (1988); *Hooks v. State,* 429 A.2d 1312 (Del.Supr.1981); *Warrick v. United States,* 551 A.2d 1332 (D.C.1988); *State v. Caraballo,* 62 Haw. 309, 615 P.2d 91 (1980); *State v. Webb,* 242 Kan. 519, 748 P.2d 875 (1988); *State v. Money,* 109 Idaho 757, 710 P.2d 667 (1985); *State v. Johnson,* 222 N.W.2d 453 (Iowa 1974); *Greenidge v. Greenidge,* 571 So.2d 905 (La.App.1990); *Collins v. State,* 69 Md.App. 173, 516 A.2d 1015 (1986); *People v. Freybler,* 173 Mich.App. 539, 434 N.W.2d 187 (1988); *State v. Cooper,* 712 S.W.2d 27 (Mo.App.1986); *State v. Doe,* 91 NM 356, 573 P.2d 1211 (1977); *State v. Walton,* 66 Ohio App.3d 243, 583 N.E.2d 1106 (1990); *State v. Verdugo,* 78 N.M. 372, 431 P.2d 750 (1967); *State v. Williams,* 303 S.C. 410, 401 S.E.2d 168 (1991); *Casias v. State,* 503 S.W.2d 262 (Tex.Cr.App.1973); *State v. Germaine,* 152 Vt. 106, 564 A.2d 604 (1989); *Head v. Commonwealth,* 3 Va.App. 163, 348 S.E.2d 423 (1986); *State v. Barefield,* 47 Wash.App. 444, 735 P.2d 1339 (1987); *State v. Eden,* 163 W.Va. 370, 256 S.E.2d 868 (1979); *Weddle v. State,* 621 P.2d 231 (Wyo.1980).

"The defendant shall be present at the arraignment, at every stage of the trial including the impanelling of the jury and the return of the verdict, *and at the imposition of sentence,* except as otherwise provided by this rule." (Emphasis added). The second sentence of Pa.R.Crim.P. 1117(a) sets out the exceptions to the general rule referred to in the last clause of the first sentence, providing as follows: *"The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict."* [Emphasis added].

Hence, the second sentence of Rule 1117(a) permits a trial judge to "proceed[ ] with the trial including the return of the verdict" *in absentia.* But it does not permit the trial judge to impose sentence *in absentia;* instead, the first sentence of Rule 1117(a) *requires* that the defendant be present. Pennsylvania law simply—expressly—does not permit sentencing *in absentia.* Thus, for this reason alone, reversal and a remand for resentencing is required.

Finally, I turn to the majority's unwarranted, unjustified and unconscionable extension of *Passaro,* by which it attempts *sub silentio* to overcome the multiple due process violations which occurred in the instant case. The most glaring weakness in the majority analysis is its inattention to the fact that Jones was unlawfully sentenced *in absentia.* This is the crucial factor distinguishing this case from the situation in *Passaro.*

In *Passaro,* a majority of this Court held that it was lawful for the Superior Court to quash the direct appeal of a convicted defendant who escaped from custody during the pendency of that appeal.[5] Passaro was present at his trial

5. When *Passaro* was decided, Justice Zappala dissented, noting that the majority strayed far beyond the federal decisional precedent it cited in support of its decision, *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), by holding that an escaped defendant "forfeits" forever his or her right to appeal as a consequence of such escape. As Justice Zappala argued, "[t]he mere fact of escape should in no way act to divest a person of *any* of his constitutional rights.... While I would certainly agree that it is proper upon a motion by the Commonwealth to quash the appeal of a fugitive pursuant to Pa.R.A.P. 1972(6), I would hold that such an appeal may

and at his sentencing; he became a fugitive thereafter, while the appeal was pending.[6] In the instant case, in contrast, defendant Jones was not present at either his trial or his sentencing.

In my view, the genius of Rule 1117 which flatly requires the presence of the defendant at sentencing is that it satisfies society's need to be assured that a convicted citizen is apprised of his or her absolute constitutional right of appellate review. Only after due process has been satisfied by the assurance that the defendant knows of this constitutional right to appeal, can it logically be argued that the defendant has forfeited that right by fleeing the jurisdiction of the court. Thus, the emphasis upon presence at sentencing.

It is only after the lawful imposition of sentence and the required colloquy of record informing the individual of his or her appellate rights, that the appellate process begins. Pa.Const.Art. V, Sec. 9. Once informed of the right to appeal, an individual may choose to file an appeal, to waive the right to appeal, or, as in the case of *Passaro,* to file a timely appeal and subsequently forfeit the right to have the appeal considered by virtue of having absconded from the jurisdiction of the court during the pendency of the appeal. It is only in that last limited circumstance that an individual can be found to have forfeited his constitutional right to appellate review pursuant to *Passaro.*

Similarly, the two United States Supreme Court decisions referenced by the majority in supposed support of its analysis, *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) and *Molinaro v. New Jersey,* 396 U.S.

be reinstated in the court's discretion if the fugitive-appellant, on petition to reinstate the appeal, can show a compelling reason for having his claim heard."

Had I been a member of this Court at the time *Passaro* was decided, I would have joined Justice Zappala's dissenting opinion enthusiastically. Nonetheless, *Passaro* is now the law of this jurisdiction, however ill-advised, and I accept its binding force for the nonce.

**6.** Passaro "escape[d] from custody during the pendency of [his] appeal." 476 A.2d at 347.

365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), are factually consistent with *Passaro,* and significantly distinguishable from the instant case. *Estelle* and *Molinaro* each involved defendants who became fugitives *after* they had attended their sentencing proceedings, while their cases were on appeal, and not defendants who were absent from before the time of the trials which resulted in their convictions.

This distinction between the present case and the situations of the defendants in the cases referenced above is critical. The referenced cases involve the forfeiture by an absent defendant of a single right, albeit an important legal right, the right to appeal. The instant case, in contrast, involves the forfeiture of *four* important legal and/or constitutional rights: the right to a fair and just trial; the right to be present at one's own trial; the right to be present at one's sentencing; *and* the right to appeal. It may be appropriate in some extraordinary circumstances to divest an absent defendant of the right to be present at his trial, or to divest a convicted and sentenced defendant of the right to appeal, which he has impliedly waived by fleeing during the pendency of the appeal, but in a decent and civilized society, the first right—the right to a fair and just trial—should be inviolate and not the subject of waiver, particularly an implied waiver.[7]

Thus, by the reasoning of the majority, even if the trial court refused to issue process to insure that critical witness-

7. The unfairness of the majority decision herein is magnified by the findings of the Superior Court panel which originally reviewed Jones' appeal. That court found it necessary to grant Jones a new trial, as the district attorney had improperly argued to the jury that it could infer guilt by the failure of the absent Jones to testify in his own behalf. The following excerpt from the closing argument of the prosecutor illustrates the problems inherent in trial *in absentia:*

Now, the Commonwealth has the burden as everyone has indicated. In the opening remarks the judge said every defendant has a right to say, Mr. Prosecutor, Mr. DA, Commonwealth, prove your case. *The Commonwealth presented witnesses to prove the [sic] case. They came into court, they face [sic] the jury, they told their story, they came to court. Was the defendant here, ladies and gentlemen? no.* Commonwealth v. Jones, (No. 01616 Phila. 1985, Oct. 26, 1988). [Emphasis added by Superior Court at p. 7, slip opinion.]

es for the defense would appear; even if the verdict was against the great weight of the evidence; even if the trial judge refused to allow defense counsel to present any witnesses, evidence, defenses, or any case at all; even if the jurors were threatened with bodily harm—at gunpoint!!!—to compel them to render a guilty verdict; even if the trial judge was the alleged victim's parent; even if perjurious testimony was offered by the Commonwealth, in all of these cases, indeed in *any* conceivable case involving *any* conceivable miscarriage of justice, the verdict would be totally unreviewable because the defendant was not present at trial.

Such an outrageous rule is nonsensical, unfair, unjust, unconstitutional, and unprecedented. Today it becomes the law of Pennsylvania.

With deep concern for the cost to our society, I vigorously dissent.

ZAPPALA, J., joins this dissenting opinion.